IN THE UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA
COLUMBIA DIVISION

| | |
|---|---|
| James Buchanan,<br><br>Plaintiff,<br><br>v.<br><br>Performance Management Group, LLC<br><br>Defendant. | C/A No. 3:24-cv-6798-SAL<br><br>**ORDER** |

Plaintiff James Buchanan ("Plaintiff") brings this action against his former employer, Performance Management Group, LLC ("Defendant"). Plaintiff originally filed this action in state court, alleging claims for violations of the Family and Medical Leave Act ("FMLA"), the Age Discrimination in Employment Act ("ADEA"), and the Americans with Disabilities Act ("ADA").[1] *See* ECF No. 1. Defendant removed the action to federal court and, following discovery, moved for summary judgment, which Plaintiff opposes. [ECF Nos. 42, 47, 49.]

This matter is before the court on the Report and Recommendation ("Report") issued by United States Magistrate Judge Kaymani D. West, made in accordance with 28 U.S.C. § 636(b) and Local Civil Rule 73.02(B)(2) (D.S.C.), recommending Defendant's motion be granted. [ECF No. 56.] Plaintiff objects to the recommendation, ECF No. 58, and Defendant responded, ECF No. 59. For the following reasons, the court declines to adopt the Report and denies Defendant's motion for summary judgment.

[1] Following Defendant's partial motion to dismiss, the court dismissed Plaintiff's ADA claims but permitted his ADEA and FMLA claims to proceed. [ECF Nos. 6, 25, 27.]

## LEGAL STANDARD

### I. Review of a Magistrate Judge's Report

The magistrate judge makes only a recommendation to this court. The recommendation has no presumptive weight, and the responsibility to make a final determination remains with this court. *See Mathews v. Weber*, 423 U.S. 261, 270–71 (1976). In response to a recommendation, any party may serve and file written objections. *See Elijah v. Dunbar*, 66 F.4th 454, 459 (4th Cir. 2023) (citing 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(3)). The district court then makes a de novo determination of those portions of the Report to which an objection is made. *Id*. To trigger de novo review, an objecting party must object with sufficient specificity to reasonably alert the district court of the true ground for the objection. *Id*. (quoting *United States v. Midgette*, 478 F.3d 616, 622 (4th Cir. 2007)). If a litigant objects only generally, the court need not explain adopting the Report and must "only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation." *Diamond v. Colonial Life & Accident Ins. Co.*, 416 F.3d 310, 315 (4th Cir. 2005) (citing Fed. R. Civ. P. 72 advisory committee's note).

An objection is specific so long as it alerts the district court that the litigant believes the magistrate judge erred in recommending dismissal of that claim. *Elijah*, 66 F.4th at 460. Objections need not be novel to be sufficiently specific. *Id*. But "[i]n the absence of specific objections . . . , this court is not required to give any explanation for adopting the recommendation." *Field v. McMaster*, 663 F. Supp. 2d 449, 451–52 (D.S.C.) (emphasis in original).

### II. Summary Judgment

Summary judgment is appropriate if a party "shows that there is no genuine dispute as to any material fact" and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). "In determining whether a genuine issue has been raised, the court must construe all inferences

and ambiguities in favor of the nonmoving party." *HealthSouth Rehab. Hosp. v. Am. Nat'l Red Cross*, 101 F.3d 1005, 1008 (4th Cir. 1996). The party seeking summary judgment shoulders the initial burden of proving to the court that there is no genuine dispute of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). A fact is "material" if it "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute of material fact is "genuine" "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*

A party asserting that a fact is genuinely disputed must support the assertion by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials." Fed. R. Civ. P. 56(c)(1)(A).

## DISCUSSION

### I. The Report

The magistrate judge issued a thorough report and recommendation, recommending this court grant Defendant's motion for summary judgment. *See* ECF No 56. The Report sets forth in detail the relevant facts and standards of law. However, because Plaintiff objects to the Report's treatment of that evidence, a brief synopsis of the relevant facts, viewed in the light most favorable to Plaintiff, is helpful here.[2]

[2] Plaintiff objects that the magistrate judge did not consider the entire record and failed to draw all reasonable inferences in his favor, particularly as to the events before and during his medical leave. *See* ECF No. 58 at 2–13. The Report, however, states that the magistrate judge reviewed the parties' factual submissions and incorporates an appendix compiling the parties' respective accounts of the relevant disputed evidence, including evidence Plaintiff contends was overlooked. *See* ECF No. 56 at 1–2 n.1, 3 n. 2; ECF No. 56-1. Nevertheless, because Plaintiff challenges the Report's treatment of the factual record, the court provides below its own synopsis of the relevant evidence, viewed in the light most favorable to Plaintiff.

### A. Factual Background

At all relevant times, Defendant owned and operated the Bush River Road Zaxby's in Columbia, South Carolina, where Plaintiff worked as a general manager from 2015 until 2024. *See* ECF No. 40 ¶¶ 2–4; ECF No. 41-1 at 3, 5; ECF No. 62 at 25. In January 2024, Plaintiff needed knee surgery and informed his supervisor, Larry Witteborg, that the surgery was scheduled for February 1 and would require him to miss several weeks of work. [ECF No. 40 ¶¶ 5–6.] Witteborg understood that Plaintiff intended to continue working until his surgery. *See* ECF No. 61 at 11. Approximately one week before the surgery, Defendant's managers, Candice Anderson, Chad Ham, and Jim Poston, came to the Bush River Road store and met with Plaintiff. [ECF No. 40 ¶ 7.] During the meeting, management asked Plaintiff about retirement, and Plaintiff responded that he hoped to continue working for approximately three more years. [ECF No. 62 at 16.] Plaintiff was seventy-four years old at the time. *See* ECF No. 40 ¶ 1. At the end of the meeting, Anderson instructed Plaintiff to leave the store. [ECF No. 62 at 16.] Plaintiff initially understood that instruction to mean that he should not return until he recovered from surgery. *Id.* at 16. He later testified, however, that as subsequent events unfolded, he came to believe that Anderson meant the instruction literally and that Defendant did not intend for him to return. *See id.* at 19, 21, 24.

That same day, Jonathon Fink also arrived at the store as a new hire. [ECF No. 61 at 10–11.] Fink was around forty years old, and Defendant hired him as a general manager in training. *See id.* at 11, 14. According to Plaintiff, he returned to the store the next day "to train the new fellow before [his] surgery." [ECF No. 47-2 at 4.] Yet, shortly after he arrived, Anderson called the store and again instructed him to leave. *See* ECF No. 62 at 21. According to Witteborg, sometime after the January meeting, management told him that Plaintiff was not coming back, and Defendant subsequently promoted Fink into the general manager role. [ECF No. 61 at 12–13.]

Nevertheless, Plaintiff remained in contact with Defendant about his medical status and sought to return to work. *See* ECF No. 40 ¶ 8; ECF No. 62 at 15–16, 18–20. On March 13, Plaintiff's physician released him to regular duties beginning March 18, subject to temporary five-pound restrictions on lifting, carrying, pushing, and pulling. *See* ECF No. 40 ¶ 8; ECF No. 47-2 at 100. After Plaintiff notified Anderson of the release, she did not permit him to return while restrictions remained, citing concerns about Plaintiff's safety and the safety of others. *See* ECF No. 40 ¶¶ 8–9; ECF No. 41-1 at 6; ECF No. 62 at 15–16. Defendant also required Plaintiff to obtain a separate medical clearance concerning his eyesight, although his visual condition predated his knee surgery and had not previously prevented him from working. *See* ECF No. 47-2 at 102; ECF No. 62 at 21–22, 27. Plaintiff obtained the requested clearance, which indicated that his vision met the legal requirements for driving. [ECF No. 47-2 at 102.]

Following that request to return, Ham asked Plaintiff to meet him at a Starbucks away from the store on March 28. *See* ECF No. 40 ¶ 10; ECF No. 62 at 18–19. During the meeting, Ham offered Plaintiff $13,000 in severance. [ECF No. 40 ¶ 10.] According to Plaintiff, Ham presented the proposal as a "take it or leave it" offer, explaining that Defendant was in the process of being sold and that he did not know what the new owners would do. [ECF No. 62 at 19.] Ham gave Plaintiff several days to decide but did not offer him the option of returning to work. *See id.* at 19, 27–28. Plaintiff thereafter consulted with his brother, an attorney, about the offer. *Id.* at 20. His brother, angered by the situation, sent Defendant an email stating, "my understanding is that your company is insisting that Mr. Buchanan retire on a take it or leave it basis." *See* ECF No. 41-1 at 71; ECF No. 47-2 at 77–78.

Plaintiff did not accept or reject the March severance offer. Instead, on April 2, he returned to his physician and was released to work without restrictions. *See* ECF No. 47-2 at 104. Plaintiff

informed Anderson that he had been released and would provide the written release when he received it. [ECF No. 47-2 at 6.] Anderson told Plaintiff that he had additional time to consider the severance offer because the closing of Defendant's sale had been postponed. [ECF No. 41-1 at 10.] During their ensuing discussions, Plaintiff asked whether Defendant would increase the severance offer to $18,000, and Anderson stated that she would get back to him. *See* ECF No. 41-1 at 6, 10. According to Plaintiff, Anderson did not tell him that he could return to work after he informed her that his restriction had been removed. *See* ECF No. 47-2 at 6; ECF No. 62 at 27–28.

Plaintiff's physician subsequently provided him with the unrestricted release on or about April 8, and Plaintiff then provided it to Defendant. *See* ECF No. 41-1 at 6; ECF No. 62 at 18. The following day, Anderson spoke with Plaintiff via conference call and informed him that Defendant had approved the $18,000 severance. [ECF No. 41-1 at 6–7.] The parties offer conflicting accounts of the substance of this conversation. According to Plaintiff, Anderson did not offer him the choice of returning to work rather than accepting the severance. [ECF No. 62 at 23–24, 27–28.] When asked whether Anderson had told him that he could return, Plaintiff responded, "Sir, if she had, I'd be working today." *Id*. at 23. Plaintiff testified that he told Anderson he would rather have his job than the money and was "pretty sure" that he again asked for his job during the call. *Id*. Plaintiff ultimately accepted severance, and his employment with Defendant ended. *See id*. at 24–25. Afterward, he applied for new full-time positions with Costco, Sam's Club, Walmart, Bojangles, and Arby's but obtained only a part-time job at Food Lion. *Id*. at 6, 28.

### B. The Magistrate Judge's Recommendation

In the Report, the magistrate judge first concluded that Plaintiff's post-deposition affidavit should not be considered to the extent it contradicts his prior deposition testimony. *Id.* at 4–5. As to Plaintiff's ADEA claim, the magistrate judge concluded that Plaintiff failed to establish a prima

facie case of age discrimination because he did not show that he suffered an adverse employment action. *Id.* at 7–10. And, even if Plaintiff established a prima facie case, the magistrate judge concluded that he failed to demonstrate that Defendant's proffered reason for the end of his employment, the negotiation and consummation of an agreed-upon severance and retirement, was pretextual. *See id.* at 10–12. The magistrate also concluded that Plaintiff's evidence that Defendant's representatives asked about his retirement plans did not constitute direct evidence of age discrimination. *Id.* at 12–13. As to Plaintiff's FMLA interference and retaliation claims, the magistrate judge found Plaintiff failed to demonstrate that Defendant either interfered with his FMLA rights or took an adverse action against him for exercising those rights. *See id.* at 13–17. Accordingly, the magistrate judge recommended granting Defendant's motion for summary judgment. *Id.* at 18.

Plaintiff's specific objections are as follows:

1) The magistrate judge failed to consider the entire record and all relevant evidence, viewed in context, supporting each element of Plaintiff's claims,[3] including the existence of an adverse employment action;
2) The magistrate judge incorrectly found no evidence of an adverse employment action despite substantial, corroborated evidence that Plaintiff did not voluntarily end his employment, instead concluding that Plaintiff voluntarily retired in exchange for severance;
3) The magistrate judge improperly considered Defendant's constructive-discharge argument because that theory is inconsistent with the record and is neither alleged nor applicable in this case;
4) The magistrate judge incorrectly found that Plaintiff failed to produce evidence of pretext even though Defendant offered no reason for seeking to separate Plaintiff from his position and Plaintiff presented sufficient direct and circumstantial evidence of age discrimination; and
5) The magistrate judge improperly disregarded Plaintiff's affidavit because it did not contradict his deposition testimony and, even if portions were contradictory, the appropriate remedy would be to disregard only those portions rather than the entire affidavit.

[3] Although Plaintiff frames his objection as applying to all his claims, the substance of his argument in this objection focuses on his FMLA interference claim. *See* ECF No. 58 at 2–8.

*See* ECF No. 58. Because Plaintiff's objections overlap and do not lend themselves to resolution in numerical order, the court addresses them by issue.

**II. Affidavit**

The court will first address Plaintiff's fifth objection, which takes issue with the Report's treatment of his post-deposition affidavit. Plaintiff contends that the magistrate judge improperly disregarded his entire post-deposition affidavit. *See* ECF No. 58 at 19–21. Yet the magistrate judge concluded only that the affidavit "will not be considered to the extent it [contradicts] his previously given deposition testimony[,]" ECF No. 56 at 5, which is within the court's discretion. *See Lewis v. Med. Univ. of S.C.,* No. CV 2:22-4088-RMG-SVH, 2024 WL 2848625, at *4 n.6 (D.S.C. May 2, 2024) ("To the extent that Plaintiff relies on her post-deposition affidavit submitted in conjunction with [the response to summary judgment] the court disregards any allegations that directly contradict [Plaintiff's] sworn testimony."); *see also Kinser v. United Methodist Agency for the Retarded–W. N. Carolina, Inc.*, 613 F. App'x 209, 210 (4th Cir. 2015) ("At the summary judgment stage, if an affidavit is inconsistent with the affiant's prior deposition testimony, courts may disregard the affidavit pursuant to the sham-affidavit rule."); *Halperin v. Abacus Tech. Corp.*, 128 F.3d 191, 198 (4th Cir. 1997) ("It is well established that [a] genuine issue of material fact is not created where the only issue of fact is to determine which of the two conflicting versions of the plaintiff's testimony is correct." (internal quotations omitted)). This rule does not, however, require disregarding an affidavit that merely supplies detail or context for earlier statements. *See Libertarian Party of Virginia v. Judd*, 718 F.3d 308, 314 n.6 (4th Cir. 2013). The court agrees with Plaintiff that certain statements in the affidavit—those that are not directly contradicted by his deposition testimony—should be taken as true for purposes of summary judgment.

The court finds that substantial portions of the affidavit clarify or provide context for, rather than contradict, his deposition testimony. *See* ECF No. 47-2 at 3–7; ECF No. 56 at 4. For example, although Plaintiff responded, "I—I guess," when asked whether the severance payment was in exchange for his retirement, the court will not treat that response as an admission that Plaintiff retired based on the surrounding testimony that substantially qualifies that answer. *See* ECF No. 56 at 5, 9. For instance, immediately after Plaintiff answered "I—I guess," counsel asked whether Plaintiff's choice was to accept severance and retire or return to work, Plaintiff answered, "Wrong," and explained that he believed he had already been terminated. [ECF No. 62 at 24.] Earlier, Plaintiff expressly denied negotiating his retirement, explaining, "I didn't take it as a retirement." *Id.* at 20. He later reiterated, "I didn't negotiate over retirement, but I—I did negotiate over the severance pay." *Id.* at 24. And on redirect, Plaintiff denied wanting to retire and stated, "I wanted my job back." *Id.* at 28. Viewed in this context, the assertion in his affidavit that he did not retire does not introduce a contrary account. *See* ECF No. 47-2 at 6. Rather, it reiterates a position he repeatedly expressed during his deposition testimony. Likewise, his affidavit's explanation that he accepted severance because he believed returning to work was not an option is consistent with his deposition testimony that he accepted the payment because, "[i]n my mind, I had been terminated." *Compare* ECF No. 47-2 at 6, *with* ECF No. 62 at 23.

The affidavit's description of Plaintiff's lifting duties is also substantially consistent with his deposition. Although the affidavit states that his job duties did not include lifting, it acknowledges that he occasionally lifted boxes when the employees designated to perform that work were unavailable. [ECF No. 47-2 at 5.] Similarly, Plaintiff testified that lifting was not "a requirement per se" but became "a necessity at times" when other employees were unavailable. [ECF No. 62 at 17.] He acknowledged lifting boxes weighing approximately forty pounds,

explained that he performed such work "[a]s little as possible," and identified other employees who ordinarily handled it. *Id.* The affidavit describes his duties more categorically, but it does not deny that he sometimes performed the lifting described in his deposition. *See* ECF No. 47-2 at 5.

Yet portions of the affidavit do present direct contradictions, which the court may disregard. When confronted during his deposition with Defendant's account that he said it might be time to move on during the April 9 conversation with Anderson, Plaintiff testified that he did not recall making the statement and could not deny it. *See* ECF No. 62 at 22–23. He likewise did not recall saying that he had neglected spending time with his family and wanted to make up for it. *Id.* His affidavit, by contrast, affirmatively denies saying that he wanted to retire and spend time with his family and disputes the statements attributed to him about moving on, except insofar as he may have said that Defendant wanted him to move on. *See* ECF No. 47-2 at 6–7. To the extent these assertions replace his professed lack of recollection with categorical denials, the court will not rely on them to create a factual dispute. But the court need not disregard Plaintiff's separate assertion that he wanted to return to work, which is expressly supported in his deposition. *See* ECF No. 62 at 23, 28. Accordingly, the court will disregard the affidavit only to the extent it directly contradicts Plaintiff's deposition testimony and will consider the remaining portions together with the deposition and other record evidence.

## III. ADEA Discrimination/FMLA Retaliation

As discussed above, the magistrate judge recommended granting summary judgment on Plaintiff's ADEA discrimination and FMLA retaliation claims. Plaintiff's second, third, and fourth objections challenge that recommendation, addressing adverse employment action and pretext.[4]

---

[4] Although Plaintiff frames his third objection as challenging the Report's consideration of constructive discharge, in substance Plaintiff principally disputes the conclusion that Plaintiff retired voluntarily. *See* ECF No. 58 at 13–16. The Report discusses the constructive discharge

**A. Applicable Standard**

Plaintiff's ADEA discrimination and FMLA retaliation claims are both analyzed under the burden-shifting framework set forth in *McDonnell Douglas Corporation v. Green*, 411 U.S. 792 (1973). *EEOC v. Clay Printing Co.,* 955 F.2d 936, 940 (4th Cir. 1992); *Laing v. Fed. Exp. Corp.*, 703 F.3d 713, 717 (4th Cir. 2013). Under this framework, Plaintiff must first establish a prima facie case for each claim. *See Palmer v. Liberty Univ., Inc.*, 72 F.4th 52, 63 (4th Cir. 2023); *Fry v. Rand Constr. Corp.*, 964 F.3d 239, 244–45 (4th Cir. 2020). If Plaintiff makes that showing, the burden shifts to Defendant to produce a legitimate, nondiscriminatory or nonretaliatory reason for the adverse action. *See Palmer*, 72 F.4th at 63; *Fry*, 964 F.3d at 245. Finally, the burden shifts back to Plaintiff to demonstrate that Defendant's stated reason is a pretext for discrimination or retaliation. *Palmer*, 72 F.4th at 63. At summary judgment, Plaintiff must "produce evidence sufficient to create a material issue of fact" as to whether Defendant's alleged reason for firing him "was not its true reason, but rather a pretext for discrimination" or retaliation. *Wannamaker-Amos v. Purem Novi, Inc.*, 126 F.4th 244, 257 (4th Cir. 2025); *see also Fry*, 964 F.3d at 246.

To establish a prima facie case of age discrimination under the ADEA, Plaintiff must show: (1) he was a member of the protected class; (2) he suffered an adverse employment action; (3) he was performing his job duties at a level that met Defendant's legitimate expectations at the time of the adverse employment action; and (4) his position was filled by a substantially younger individual with comparable qualifications. *See Palmer*, 72 F.4th at 63; *Westmoreland v. TWC Admin. LLC*, 924 F.3d 718, 725 (4th Cir. 2019). And, to establish a prima facie case of FMLA

---

standard, but the recommendation does not depend on Plaintiff's failure to meet that standard. ECF No. 56 at 7–10. Instead, the magistrate judge concludes that Plaintiff failed to show an adverse employment action because he accepted Defendant's offer of severance and retirement. *See id.* at 10. Accordingly, the court construes Plaintiff's second and third objections as both pertaining to the existence of an adverse employment action.

retaliation, Plaintiff must establish: (1) he engaged in a protected activity; (2) Defendant took an adverse employment action against him; and (3) there was a causal link between the two events. *Fry*, 964 F.3d at 245. Here, the magistrate judge concluded that Plaintiff failed to establish a prima facie case for either claim because he failed to show that he suffered an adverse employment action. *See* ECF No. 56 at 10, 16.

**B. Adverse Employment Action**

The magistrate judge concluded that Plaintiff failed to establish an adverse employment action because the record, viewed in the light most favorable to Plaintiff, demonstrates that he negotiated a severance in exchange for retirement. *See* ECF No. 56 at 10. Plaintiff's second and third objections reject this conclusion, arguing that the record supports a reasonable inference that Defendant terminated the employment relationship by refusing to permit him to return to work and that he accepted severance as a part of that involuntary separation, rather than voluntarily retiring. *See* ECF No. 58 at 8–16. This court agrees.

An adverse employment action is an "act which adversely affects the terms, conditions, or benefits of the plaintiff's employment[,]" *James v. Booz-Allen & Hamilton, Inc.*, 368 F.3d 371, 375 (4th Cir. 2004), abrogated on other grounds by *Muldrow v. City of St. Louis, Missouri*, 601 U.S. 346 (2024). Such actions include "discharge, demotion, decrease in pay or benefits, loss of job title or supervisory responsibility, or reduced opportunities for promotion[.]" *Boone v. Goldin*, 178 F.3d 253, 255 (4th Cir. 1999), abrogated on other grounds by *Muldrow*, 601 U.S. 346 (2024).

Here, the parties agree that Defendant never used the terms "fired" or "terminated." [ECF No. 40 ¶ 19.] But "[n]o specific words need be present to support a finding of actual discharge[.]" *E.E.O.C. v. Serv. News Co.*, 898 F.2d 958, 962 (4th Cir. 1990). Rather, an employee may establish discharge through direct or circumstantial evidence. *Honor v. Booz-Allen & Hamilton, Inc.*, 383

F.3d 180, 185 (4th Cir. 2004). Therefore, "an actual discharge occurs when the employer, by words or acts, manifests a clear intention to dispense with an employee's services." *E.E.O.C. v. Marion Motel Assocs.*, No. 91-2070, 1992 WL 90283, at *5 (4th Cir. May 5, 1992) (citing *Payne v. Crane Co.*, 560 F.2d 198, 199 (5th Cir. 1977)). By contrast, an employee who leaves believing continued employment remains possible generally cannot claim actual discharge. *See Alba v. Merrill Lynch & Co.*, 198 F. App'x 288, 293 n.3 (4th Cir. 2006). Thus, the question here is whether Defendant's words or conduct, viewed in the light most favorable to Plaintiff, indicated that continued employment was no longer available for Plaintiff.

For example, in *Service News*, the Fourth Circuit upheld a finding of actual discharge even though the employer never expressly told the plaintiff she was fired. 898 F.2d at 962. After the plaintiff informed her supervisor of her pregnancy, he almost immediately hired a new person to take over the plaintiff's role. *Id.* at 960. The supervisor then met with the plaintiff and repeatedly expressed concerns about her continuing to work while pregnant, recounted difficulties experienced by other pregnant workers, and addressed the possibility of unemployment compensation and continued health insurance benefits. *Id.* Although the supervisor never used the words "fired" or "discharged" during the meeting, the plaintiff concluded that she had been terminated and began seeking other work. *Id.* at 960–62. The Fourth Circuit concluded that such evidence supported a finding of actual discharge despite the absence of express termination language. *Id.* at 962.

By contrast, in *Honor*, the Fourth Circuit found no actual discharge where the plaintiff had been pursuing other employment before the alleged termination, announced his resignation to co-workers, and referred to his departure as a "resignation" in departing communications. 383 F.3d at 185–86. Based on that evidence, the court held that a reasonable jury could only find that the

plaintiff voluntarily resigned. *Id.* at 186. Similarly, in *Alba*, the Fourth Circuit rejected an actual-discharge theory because the plaintiff admitted that, after his final conversation with his supervisor, he still believed his employment might continue. 198 F. App'x at 293 n.3. Thus, unlike the plaintiff in *Service News*, the plaintiff in *Alba* did not consider his employment actually terminated. *Id.*

Here, when viewed in the light most favorable to Plaintiff, the record permits a reasonable inference that Defendant ended the employment relationship rather than Plaintiff voluntarily retiring. Before his surgery, Plaintiff informed Witteborg that he intended to continue working until the surgery. *See* ECF No. 61 at 11. Around a week before the surgery, however, managers came to the store to meet with Plaintiff. [ECF No. 40 ¶ 7.] During that meeting, the managers asked Plaintiff about retirement, and Plaintiff responded that he wanted to continue working for three more years. [ECF No. 62 at 16.] At the end of the meeting, Anderson instructed Plaintiff to leave the store, which Anderson reiterated the following day when Plaintiff attempted to return. *See* ECF No. 62 at 16, 21. Further, Fink also arrived at the store as a new general manager in training on the day of the meeting. [ECF No. 61 at 10–11.] And Witteborg testified that, before Plaintiff sought to return, management told him that Plaintiff was not coming back and that Defendant subsequently promoted Fink to the general manager role. [ECF No. 61 at 12–13.] Although Plaintiff continued communications with Defendant concerning his medical status and possible return to work, the events surrounding the January meeting support a reasonable inference that Defendant had decided Plaintiff would not return to his position.

The events following Plaintiff's medical release further support this inference. When Plaintiff's physician released him to regular duties subject to temporary five-pound lifting restrictions, Anderson declined to permit him to return based on safety concerns. *See* ECF No. 40 ¶¶ 8-9; ECF No. 41-1 at 6; ECF No. 47-2 at 100; ECF No. 62 at 15–16. Although workplace safety

is a legitimate concern, the record contains no job description or management testimony establishing that Plaintiff's position required heavy lifting. Plaintiff instead testified that lifting was not a requirement "per se," that he did it "[a]s little as possible," generally delegating the task to other employees, and that he could perform managerial duties within his restrictions. *See* ECF No. 47-2 at 4–5; ECF No. 62 at 16–17. Anderson also required Plaintiff to obtain clearance concerning his eyesight, even though his longstanding eye condition had not changed and had not previously prevented him from performing his job. *See* ECF No. 47-2 at 102; ECF No. 62 at 21–22, 27. Defendant does not identify any change in Plaintiff's eyesight that prompted this additional requirement. Viewed in the context of the January events, these additional return-to-work requirements strengthen the inference that Defendant did not intend for Plaintiff to resume his position.

The subsequent severance discussions provide further support for that inference. While still attempting to return to work, Ham offered Plaintiff the initial severance offer. *See* ECF No. 40 ¶ 10; ECF No. 62 at 18–19. According to Plaintiff, Ham presented the offer on a "take it or leave it" basis without identifying continued employment as an alternative and explained that the offer may not stand after Defendant was sold. *See* ECF No. 62 at 19. Defendant points to no evidence disputing the lack of return option. Plaintiff did not accept or reject this offer but instead obtained an unrestricted medical release and informed Anderson. *See* ECF No. 47-2 at 6. According to Plaintiff, Anderson did not offer him an opportunity to return after receiving this information. *See* ECF No. 47-2 at 6; ECF No. 62 at 23, 27–28. Plaintiff then asked whether Defendant would increase the severance offer to $18,000. Defendant argues that this negotiation supports its position that he voluntarily retired, *see* ECF No. 59 at 8, but a reasonable jury could conclude that Plaintiff sought better compensation after he believed Defendant had foreclosed his return.

Plaintiff accepted the $18,000 severance offer after Anderson informed him of Defendant's approval. *See* ECF No. 41-1 at 6–7; ECF No. 61 at 24–25. Plaintiff testified that Anderson never offered him the option of returning during this conversation. *See* ECF No. 62 at 23. Defendant disputes this account, relying on declarations from Anderson and Toms that state Plaintiff was offered the option of returning but chose severance. *See* ECF No. 41-1 at 7, 68. Resolving these conflicting accounts, however, would require the court to impermissibly weigh the evidence and assess witness credibility. *See Gray v. Spillman,* 925 F.2d 90, 95 (4th Cir. 1991) (holding that a court may not judge credibility or weigh evidence on summary judgment). Defendant further relies on Plaintiff's answer, "I—I guess," when asked whether severance was made in exchange for his retirement. *See* ECF No. 58 at 7. Yet, as discussed above, Plaintiff's testimony before and after that question explicitly denies he retired, and Plaintiff sought new full-time positions elsewhere after his employment with Defendant ended. *See* ECF No. 62 at 20, 24–25, 28. Such evidence presents a genuine dispute as to whether the severance offer was in exchange for retirement.

Taken together and viewed in the light most favorable to Plaintiff, the evidence permits a reasonable jury to find that Defendant's conduct manifested a clear intention to dispense with Plaintiff's services. The record therefore presents a genuine dispute as to whether Defendant terminated Plaintiff, and summary judgment is not warranted on the ground that Plaintiff failed to establish an adverse employment action. Plaintiff's objections are sustained.

The magistrate judge concluded, and the court agrees, that Plaintiff satisfies the remaining elements of his prima facie ADEA claim. *See* ECF No. 56 at 10. As to Plaintiff's prima facie FMLA retaliation claim, Plaintiff has satisfied the first two elements and has likewise presented sufficient evidence to establish the remaining causation element. Although neither party addresses causation in their briefings, temporal proximity between an employee's protected activity and

termination may establish the causation element at the prima facie stage. *See Yashenko v. Harrah's NC Casino Co.*, LLC, 446 F.3d 541, 551 (4th Cir. 2006*);.see also Laing*, 703 F.3d at 720 (concluding that the plaintiff established the requisite causation element where she was suspended upon returning from medical leave and terminated within one month). Here, Plaintiff requested and took FMLA leave, and Defendant ended his employment when he sought to return from that leave. The record therefore establishes causation at this stage. Accordingly, Plaintiff has produced sufficient evidence to establish a prima facie case for both ADEA discrimination and FMLA retaliation claims.

### C. Pretext

Plaintiff's fourth objection challenges the Report's conclusions that Defendant offered a legitimate, nondiscriminatory reason for his termination and that he failed to establish pretext.[5] *See* ECF No. 58 at 16–19. Specifically, the Report identifies Defendant's proffered reasons as "the negotiation of and consummation of an agreed-to severance agreement and retirement." ECF No. 56 at 11. Plaintiff contends that this reason is false because he produced sufficient evidence from which a reasonable jury could find that he did not retire voluntarily. *See* ECF No. 58 at 17–19.

Because Defendant produced a legitimate, nondiscriminatory and nonretaliatory reason for Plaintiff's discharge, the burden shifts back to Plaintiff to produce sufficient evidence to create a genuine issue of material fact as to whether Defendant's alleged reason was not its true reason, but rather pretext for discrimination or retaliation. *See Wannamaker-Amos*, 126 F.4th at 257; *Fry*, 964 F.3d at 246. Plaintiff can establish pretext in one of two ways: (1) by offering evidence that

[5] Although Plaintiff labels his fourth objection as challenging the Report's treatment of direct evidence, the substance of his objection characterizes the evidence as circumstantial and proceeds under the *McDonnell Douglas* framework. *See* ECF No. 58 at 2, 16–19. Accordingly, the court construes the objection as challenging the Report's pretext determination.

Defendant's justification is "unworthy of credence," or (2) by "adducing other forms of circumstantial evidence sufficiently probative of discrimination." *See Wannamaker-Amos*, 126 F.4th at 257 (citing *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 143, 147 (2000)). Under this standard, "a plaintiff's prima facie case, combined with sufficient evidence to find that the employer's asserted justification is false, may permit the trier of fact to conclude that the employer unlawfully discriminated." *Reeves*, 530 U.S. at 148. Yet that showing will not always be adequate, as "there will be instances where, although the plaintiff has established a prima facie case and set forth sufficient evidence to reject the defendant's explanation, no rational factfinder could conclude that the action was discriminatory." *Id*.

Here, as discussed above, Plaintiff has produced sufficient evidence from which a reasonable jury could find that he did not voluntarily retire in exchange for severance but was instead discharged by Defendant. Plaintiff has therefore produced sufficient evidence to create a genuine dispute of material fact that Defendant's proffered reason for ending his employment was false. When combined with Plaintiff's prima facie cases of age discrimination and FMLA retaliation, this evidence permits a reasonable jury to conclude that Defendant discriminated and retaliated against him. This is not a case in which the record conclusively establishes some other nondiscriminatory and nonretaliatory reason for Defendant's actions or otherwise precludes a rational finding of discrimination or retaliation. To the contrary, Defendant does not dispute that Plaintiff was satisfactorily performing his job, yet its managers questioned him about retirement shortly after he requested medical leave and directed him to leave after he expressed his desire to continue working. *See* ECF No. 40 ¶¶ 5–7; ECF No. 41-1 at 5; ECF No. 56 at 10; ECF No. 61 at 11; ECF No. 62 at 16. The record further permits a finding that Defendant thereafter informed Witteborg that Plaintiff would not return, replaced Plaintiff with a substantially younger employee

while he remained on leave, and declined to reinstate him following his unrestricted medical release. *See* ECF No. 61 at 10–14; ECF No. 62 at 23–24, 27–28. Accordingly, Plaintiff has established a genuine dispute of material fact as to pretext, and his objection is sustained. Summary judgment is therefore denied as to Plaintiff's ADEA discrimination and FMLA retaliation claims.

**IV. FMLA Interference**

Finally, Plaintiff's first objection rejects the magistrate judge's conclusion that he failed to establish his FMLA interference claim. *See* ECF No. 58 at 2–8. Specifically, Plaintiff argues the record permits a reasonable jury to find that Defendant interfered with his FMLA rights by refusing to restore him to his position following his March and April medical releases. *See id*. at 6–8.

To establish an FMLA interference claim, Plaintiff must show that (1) he was entitled to an FMLA benefit; (2) Defendant interfered with the provision of that benefit; and (3) that interference caused harm. *See Adams v. Anne Arundel Cnty. Pub. Schs.,* 789 F.3d 422, 427 (4th Cir. 2015). The FMLA gives an eligible employee a prescriptive right to take up to twelve workweeks during a twelve-month period when a serious health condition renders him unable to perform the functions of his position. *Id.* at 426; *see also* 29 U.S.C. § 2612(a)(1)(D). Upon returning from FMLA leave, the employee is entitled "to be restored by the employer to the position of employment held by the employee when the leave commenced," or "to be restored to an equivalent position with equivalent employment benefits, pay, and other terms and conditions of employment." *Id.* § 2614(a)(1)(A)–(B). However, "an employee who remains 'unable to perform an essential function of the position' once [his] FMLA leave ends is not entitled to restoration or another position." *Ainsworth v. Loudon Cnty. Sch. Bd.*, 851 F. Supp. 2d 963, 975 (E.D. Va. 2012) (quoting 29 C.F.R. § 825.216(c)).

As stated above, Plaintiff contends that the record permits a reasonable inference that Defendant interfered with his right to restoration following FMLA leave. *See* ECF No. 58 at 6–8.

He first argues that Defendant interfered with that right when it refused to restore him after his March medical release. *See id.* at 6–7. Although that release imposed lifting restrictions, Plaintiff maintains that those restrictions did not prevent him from performing his job. *See* ECF No. 47-2 at 5. Defendant produced no job description or other documentary evidence identifying the ability to lift forty pounds as a requirement for Plaintiff's position. Moreover, although Plaintiff acknowledged that he occasionally lifted boxes weighing up to forty pounds, he testified that he did so as little as possible and typically delegated that work to other employees. *See* ECF No. 62 at 17. This record, therefore, presents a dispute as to whether lifting forty pounds was an essential function of Plaintiff's position. *See Haggins v. Wilson Air Ctr. LLC*, 163 F.4th 872, 877-78 (4th Cir. 2026) (explaining that although "the decision about a position's essential functions belongs, in the first instance, to the employer[,]" the court must "consult the full range of evidence bearing on the employer's judgment, such as a position's written job description and testimony from senior employees").

The court need not resolve that dispute, however. Plaintiff subsequently provided Defendant with an unrestricted medical release in April and again sought to return to work. *See* ECF No. 41-1 at 6; ECF No. 62 at 18–19. As explained above, the evidence permits a reasonable jury to find that Defendant did not offer to restore Plaintiff to his position but instead discharged him. A genuine dispute of material fact thus exists as to whether Defendant interfered with Plaintiff's right to restoration under the FMLA. Accordingly, Plaintiff's objection is sustained, and summary judgment is denied as to Plaintiff's FMLA interference claim.

## CONCLUSION

As outlined above, the court declines to adopt the Report and its ultimate recommendation. Defendant's motion for summary judgment, ECF No. 42, is therefore **DENIED**.

**IT IS SO ORDERED.**

September 8, 2026
Columbia, South Carolina

Sherri A. Lydon
United States District Judge